E-FILED
Wednesday, 23 July, 2025  03:12:49 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| HENRY L. MACK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-1053 |
| | ) | |
| MATTICKS *et al.*, | ) | |
| Defendants. | ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Henry L. Mack, an inmate at Illinois River Correctional Center ("IRCC"). Plaintiff has also filed Motions for Injunctive Relief (Docs. 3, 10), to Amend Exhibits (Doc. 7), to Supplement Motion for Injunctive Relief (Doc. 8), and Request Counsel (Doc. 13).

## I.    Complaint

### A. Screening Standard

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. Upon reviewing the complaint, the court accepts the factual allegations as accurate, construing them liberally in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

Plaintiff alleges constitutional violations against the following Defendants: Medical Records Director Lisa Bishop, Grievance Officer Kellie Dennis, Warden C. Jones, Medical Director R. Matticks, Nurse Practitioner Gomez, Healthcare Unit Administrator J. Meaker, Head Dietician Peterson, Chaplain K. Rees, Nurse Amanda Thomas, and Wexford Health Sources, Inc. ("Wexford").

Plaintiff's pleading provides a comprehensive account of his medical condition and the medical treatment sought at IRCC.

Plaintiff explains that he has a sinus issue that was being treated with Nasacort, a nasal spray that Plaintiff could not possess. (Pl. Compl. Doc. 1 at 8:22.) Without that or similar medication, Plaintiff experienced extreme headaches, eye and nose tightness, breathing difficulties, low energy, and difficulty focusing. (*Id*.)

In November 2022, a "new medical director" and "a nurse practitioner" agreed to prescribe Plaintiff maximum-strength nasal strips for one year instead of the nasal spray Plaintiff had been receiving. (*Id*. at 10.) In May 2023, Plaintiff received seventy nasal strips as part of his year-long prescription, which was supposed to be refilled in July 2023.

Plaintiff claims that Defendant Thomas, who managed the pharmacy and knew of Plaintiff's condition, did not dispense refills of Plaintiff's nasal strip prescription for the remainder of the prescription term. In March 2024, a nurse practitioner renewed Plaintiff's nasal strip prescription for another year. In May 2024, Plaintiff received a box

of thirty moderate-strength nasal strips without an attached pharmacy label or refill instructions. Plaintiff also claims that Thomas refused to comply with a nurse practitioner's order not to substitute his Metamucil fiber supplement. (*Id*. at 11) In this regard, Plaintiff claims that Thomas provided a substitute supplement, which he surmises caused him to experience bloody stools. (*Id*.)

In September 2023, Plaintiff saw Defendant Gomez for complaints of bloody stools and associated abdominal pain. Plaintiff acknowledges that Gomez ordered a test to rule out the presence of cancer. However, Plaintiff notes that Gomez took over a year to conduct a follow-up examination to address the cause of his medical condition. In November 2024, Plaintiff had a colonoscopy that removed two polyps. Plaintiff further claims that he informed Gomez about his lack of refills for his nasal strip prescription, which was due in August 2024. (*Id*. at 14.) Plaintiff further asserts that he notified Defendant Meaker about his nasal strip refill issue and abdominal pain, but she took no action to address his concerns. (*Id*. at 15.)

Plaintiff explains that he uses a Continuous Positive Airway Pressure ("CPAP") machine to treat his sleep apnea. In this regard, Plaintiff noted that Defendant Bishop is responsible for ordering CPAP equipment. Plaintiff acknowledges that he began asking Bishop about his refills, and she responded that she was not responsible for medical refills. (*Id*. at 17.)

Plaintiff states that he directly spoke to Defendant Jones about his healthcare issues (*i.e.*, bloody stool, refills, fiber supplement) and Jones told Plaintiff to send him a

letter and address it to his office. (*Id*. at 18.) Plaintiff did so but claims he received a standard response regarding signing up for sick call.

In June 2024, Plaintiff was transferred to IRCC's Honor Wing, a specialized housing unit for inmates who have no disciplinary infractions for at least five years. During his time residing in the honor wing, Plaintiff had contact with Defendant Jones at least three times a week. Plaintiff relayed his concerns regarding his medical conditions to Jones over the next four months. Jones responded that he relies on the professionals who provide medical care.

In October 2024, Defendant Jones entered the wing with several auditors. As Plaintiff began to voice his medical concerns regarding the lack of medical care for his conditions, Jones interrupted, stating that Plaintiff's grievances were deemed non-emergent. (*Id*. at 21.) The next day, Plaintiff was removed from the honor wing.

Plaintiff asserts that Defendant Dennis failed to investigate the numerous grievances he filed regarding his medical care claims. Plaintiff also contends that Defendant Jones, Peterson, and Rees are impeding his ability to practice his religion freely by not adhering to his religious dietary standards.

### C. Analysis

To make out a *prima facie* case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff states a First Amendment retaliation claim against Defendant Jones for exercising his right to file grievances and expressing his concerns regarding the medical care he received. *See Ogurek v. Gabor*, 827 F.3d 567, 568 (7th Cir. 2016) ("The First Amendment of course creates a right to 'petition the Government [which by interpretation of the due process clause of the Fourteenth Amendment has been held to include state and local government] for a redress of grievances' . . . .").

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To succeed on a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy a test that has both an objective and subjective part. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Under the objective part, a plaintiff must show that his medical condition is sufficiently severe. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the subjective part, the prison official must have acted with a "sufficiently culpable state of mind." *Id.* A "deliberate indifference" standard is used in the medical care context. *Estelle*, 429 U.S. at 104.

"A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (internal quotation marks omitted)).

Construing Plaintiff's account as accurate, the Court concludes that Plaintiff's account is sufficient to state an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Gomez, Jones, Meaker, and Thomas for the alleged lack of medical care noted *supra*. However, Plaintiff's account does not state a claim against Defendants Bishop, Matticks, or Wexford.

Plaintiff named Defendant Bishop, assuming she was responsible for ordering nasal strip refills because she had ordered Plaintiff's CPAP equipment. (Pl. Compl., Doc. 1 at 17:23.) However, Bishop informed Plaintiff that she does not manage prescription refills. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen.")

Plaintiff names Defendant Matticks, claiming that, as the Regional Medical Director, he has final decision-making authority over collegial reviews. (Pl. Compl., Doc. 1 at 2:5.) However, Plaintiff does not provide any facts that establish or permit the inference that Matticks violated Plaintiff's constitutional rights in exercising that authority. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("Rule 8 specifies what is required in the complaint: 'A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . .'") (quoting Fed. R. Civ. P.8(a)).

Defendant Wexford can be held liable under § 1983 if an unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (stating that the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby [clarify] that municipal liability is limited to action for which the municipality is … responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphases in original).

Plaintiff asserts that Wexford is liable because of the alleged deliberate indifference to his serious medical need exhibited by its employees (Pl. Compl., Doc. 1 at 34:52-53), which does not state a *Monell* claim.

Furthermore, the Court concludes that Plaintiff's First Amendment Free Exercise of Religion claims against Defendants Jones, Peterson, and Rees belong in a different suit. A plaintiff may not join two claims that did not arise out of a single transaction. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . ."). The basis underpinning Plaintiff's First Amendment claim concerns the restriction of certain food items that Plaintiff asserts burdens the free exercise of his religion (Pl. Compl., Doc. 1 at 36:56, 57), which is unrelated to his Eighth Amendment deliberate indifference claims. *See George*, 507 F.3d at 607 ("Unrelated claims

against different defendants belong in different suits, not only to prevent … morass … but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

## II.   Amend Exhibits

The Court denies Plaintiff's Motion to Amend Exhibits (Doc. 7) as unnecessary. The Court does not accept piecemeal amendments to pleadings. Additionally, a complaint is not "a statement of the party's *proof.*" *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998) (emphasis in original) ("Litigants are entitled to discovery before being put to their proof, and treating the allegations of the complaint as a statement of the party's *proof* leads to windy complaints and defeats the function of Rule 8."). "The Rules of Civil Procedure make a complaint just the starting point. Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving . . . ." *Id.* at 518. It is unnecessary, and in fact, forbidden, for a complaint to include "all of the evidence needed to prevail at trial." *Id.* (declaring that plaintiffs should not be "larding their complaints with facts and legal theories"). Plaintiff can provide the exhibits appended to his filing to Defendants during the discovery process, which the Court will explain in a Scheduling Order after Defendants have been served and filed their responsive pleading, which typically takes sixty days.

Furthermore, if Plaintiff elects to file an amended pleading, it must stand independently without reference to his initial filing and contain all claims against all defendants. Plaintiff's amendment must specify the constitutional violation, when it

occurred, and the Defendant or Defendants personally involved. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

## II.    Counsel

Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept pro bono appointments in civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's Motion for Counsel (Doc. 13) is denied because he has not satisfied his threshold burden of demonstrating that he has attempted to hire counsel, which typically requires writing to several lawyers and attaching the responses received.

The Court will address Plaintiff's Motions for Injunctive Relief (Docs. 3, 11) and to Supplement (Doc. 8) separately.

**IT IS THEREFORE ORDERED:**

  1)    **Plaintiff's Motion to Amend Exhibits (Doc. 7) is DENIED.**

2)      Plaintiff's Motion for Counsel (Doc. 13) is DENIED.

3)      According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with a First Amendment retaliation claim against Defendant Jones and an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Jones, Gomez, Meaker, and Thomas. Plaintiff's claims against Defendants proceed in their individual capacity only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

4)      The Clerk of the Court is DIRECTED to terminate Bishop, R. Matticks, Peterson, K. Rees, and Wexford as Defendants.

5)      This case is now in the process of service. The Court recommends that Plaintiff wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.

6)      The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendants have not filed their respective Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

7)      If a Defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be kept only by the Clerk and shall not be kept in the public docket nor disclosed by the Clerk.

8)      Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses proper under the Federal Rules. The Answer and later pleadings shall be to the issues and claims stated in this Order. Generally, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9)  This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk of the Court. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will provide further details on the discovery process.

10)  Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11)  Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12)  If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

13)  The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

14)  The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED July 23, 2025.


s/ *Colleen R. Lawless*
_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE